UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL ARRINGTON,

    Plaintiff,

v.                                      CASE NO.: 1:11-cv-00106-SPM-GRJ

DETECTIVE THOMAS KINSEY,
in his individual capacity, and
SADIE DARNELL, in her official
capacity as Sheriff of Alachua
County, Florida,

    Defendants.

_____/

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

This cause comes before the Court on Defendants' Motions for Summary Judgment (docs. 38, 39) and Plaintiff's response (doc. 49, 52). After a careful review of the record and the applicable law, the Court concludes that Defendants' motions for summary judgment should be granted.

**I.   BACKGROUND**

This case involves Plaintiff's arrest for the murder of his brother and attempted murder of his sister-in-law – charges which were later dismissed. At the time of the incident, Michael Arrington (Plaintiff), lived in a travel trailer on a rural piece of property in Newberry, Florida. Plaintiff's brother, Carl Arrington (Mr. Arrington), and Carl's wife, Dannette Arrington (Mrs. Arrington), lived in a

mobile home situated on the same property. On July 10, 2007, at approximately 1:00 a.m., Plaintiff called 911 and told the dispatch operator that he was awaken by the sound of gunshots and that he saw someone running from his brother's home. Deputies Butscher and Elliot were the initial responders from the Alachua County Sheriff's Office, followed by Detectives Kinsey, Kelly and Sgt. Bernel. Shortly after the deputies arrived on the scene, Plaintiff approached them and the deputies instructed Plaintiff to sit on the ground, to which Plaintiff replied, "I don't want to go to prison or jail for this." Mrs. Arrington then accused Plaintiff of shooting Mr. Arrington and the deputies separated the two individuals.

Mrs. Arrington informed the deputies that she and Mr. Arrington were asleep when someone banged on the back door to their trailer. When Mr. Arrington opened the door, the suspect shot him. Mrs. Arrington then ran into one of the bedrooms, shut the door, and sat down placing her weight against the door to prevent the shooter from getting in the bedroom. The shooter pried the door open enough to reach his hand inside and fire several shots, and then he left. Mrs. Arrington said she could hear the distinctive sound that Plaintiff makes when he walks because of the canes he uses to walk. Plaintiff had fresh abrasions on his fingers. Mrs. Arrington described the suspect as having blonde hair, a long sleeve grey shirt and blue jeans. The description matched Plaintiff's physical characteristics and what he was wearing at that time. Mrs. Arrington informed the officers that the brothers had a history of arguing and that she

2

believed Plaintiff was mentally unstable.  There was a previous incident during which Mrs. Arrington called the police fearing that Plaintiff was going to beat up Mr. Arrington.

At the scene, Defendant Kinsey noticed that Plaintiff was walking with two canes and Deputy Butscher noticed a red splash on Plaintiff's shoe, which appeared to possibly be blood.  Plaintiff consented to the search of his home and agreed to have his hands swabbed and his clothes collected for gunshot residue analysis.  During the search of Plaintiff's home, marijuana, several firearms, and ammunition were found.  None of the firearms appeared to be the firearm used to shoot Mr. Arrington and none appeared to have been recently fired.

As part of his investigation, Detective Kelly stood where Plaintiff said he saw the shooter flee from Mr. Arrington's trailer, but determined that Plaintiff could not have observed the shooter flee because shrubs and trees blocked the view.  Plaintiff had indicated that after he heard the gunshots he attempted to call his brother on the telephone, but did not succeed, and then called 911.  Plaintiff allowed Detective Kelly to look at Plaintiff's phone and verify that Plaintiff called Mr. Arrington.  Additionally, the deputies deployed a police dog to the scene and it did not "hit" on Plaintiff.

Plaintiff was then placed under arrest for the possession of marijuana and the possession of firearms by a convicted felon.  He was transported to the

Alachua County Sheriff's Office to be interviewed. Defendant Kinsey and Detective Kelly conducted an interview of the Plaintiff until Plaintiff invoked his right to counsel. During Plaintiff's interview, Sgt. Bernal spoke with the State Attorney's Office which approved an on-view arrest of Plaintiff. Prior to contacting the State Attorney's Office, Sgt. Bernal thought there was probable cause to arrest Plaintiff for murder and attempted murder. In addition to the statement made by Mrs. Arrington accusing Plaintiff of shooting Mr. Arrington, Detective Kelly and Sgt. Bernal both believed there was probable cause to arrest Plaintiff for murder and attempted murder. Defendant Kinsey, who had never handled a homicide case before, did not believe that there was probable cause to arrest Plaintiff on charges of murder and attempted murder. However, Defendant Kinsey states that he was simply following orders in handling the paperwork for the arrest warrant for murder and attempted murder, which Defendant Kelly reviewed and notarized.

Subsequent to Plaintiff's arrest, the Florida Department of Law Enforcement returned the results of the gunshot residue test which indicated that there was no gunshot residue on Plaintiff's hands. On September 7, 2007, as a result of an adversarial preliminary hearing, Judge Lott for the Eighth Judicial Circuit of Florida entered an order finding that there was no probable cause to hold Plaintiff on the charge of murder or attempted murder, and ordered that he be released. In April of 2008, another individual confessed to the murder of Mr.

Arrington.

Plaintiff filed a five count complaint (doc. 1) against Defendants: Count I – false arrest under § 1983 against Defendant Kinsey; Count II – malicious prosecution under § 1983 against Defendant Kinsey, Count III – municipal liability under § 1983 against Defendant Darnell; Count IV – a state law claim for false imprisonment against Defendant Darnell; and Count V – a state law claim for malicious prosecution against Defendant Darnell. Both Defendant Kinsey and Darnell filed motions for summary judgment as to all claims.

## II. LEGAL STANDARD

### *Summary Judgment*

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it might affect the outcome of the case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmovant. Id. It is only when the material facts are so clear that they can reasonably be resolved only in favor of the movant that summary judgment is appropriate. Id. at 248-51. If the material facts can be resolved in favor of either party, then the case must proceed to trial. Id.

The initial burden is on the movant to show that there are no genuine

issues of material fact to be determined at trial.  Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000).  In assessing whether this burden has been met, the court views the evidence and all factual inferences in the light most favorable to the nonmovant, and resolves all reasonable doubts about the facts in favor of the nonmovant.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

If the movant has satisfied its initial burden, the burden shifts to the nonmovant who must show "that summary judgment would be inappropriate because there exists a material issue of fact."  Mullins, 228 F.3d at 1313.  The burden can be met by presenting enough evidence to show that a reasonable finder of fact could find for the nonmovant.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The nonmovant must present more than a scintilla of evidence in support of its position.  Anderson, 477 U.S. at 254.  The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251.

### *False Arrest*

Count I of Plaintiff's complaint alleges that Defendant Kinsey falsely arrested Plaintiff in violation of his Fourth Amendment right under the U.S. Constitution to be free from unreasonable search and seizures.  An arrest constitutes seizure of that person.  Skop v. City of Atlanta, Georgia, 485 F.3d

1130, 1137 (11th Cir. 2007). The existence of probable cause at the time of arrest, bars a section 1983 claim for false arrest.[1] Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004). A discussion of the required elements for probable cause is below.

### *Malicious Prosecution*

To establish a section 1983 malicious prosecution claim, Plaintiff must establish: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. Grider v. City of Auburn, Alabama, 618 F.3d 1240, 1256 (11th Cir. 2010). The elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff's favor; and (4) caused damage to the plaintiff.[2] Id. Is it well established that, as to the second prong, an arrest without probable cause is an unreasonable seizure in violation of the Fourth amendment. Id.

### *Municipal Liability*

Plaintiff also brought a claim against Defendant Darnell for municipal

---

[1] A showing of probable cause also precludes recovery for a false imprisonment claim under Florida law. Jernigan v. State, 566 So.2d 39, 40 (Fla. 1st Dist. Ct. App. 1990).

[2] A malicious prosecution claim under Florida law requires a Plaintiff to establish the same elements. See Kalt v. Dollar Rent-A-Car, 422 So.2d 1031, 1032 (Fla. 3d Dist. Ct. App. 1982).

liability.  In order to award damages against a municipal corporation based on the actions of one of its officers, the officer has to have inflicted constitutional harm.  Case v. Eslinger, 555 F.3d 1317, 1328 (11th Cir. 2009).  Therefore, if there was probable cause to arrest Plaintiff, Defendant Kinsey did not inflict any constitutional harm and the municipality cannot be held liable.

### *Probable Cause*

The crux of the matter is whether there was probable cause to arrest Plaintiff for murder and attempted murder.  The standard for determining whether probable cause exists is the same under Florida and federal law.  Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998).  Probable cause requires that an arrest be objectively reasonable under the totality of the circumstances.  Id. at 1435.  The observations and experiences of the officers on the scene are weighed as part of the totality of the circumstances.  See United States v. Gonzalez, 969 F.2d 999,1003 (11th Cir. 1992).  The standard for probable cause is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Rankin, 133 F.3d at 1435.  The collective knowledge of law enforcement can be sufficient to establish probable cause if that knowledge is derived from reasonably trustworthy information.  See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010).

More than a mere suspicion is required, but not convincing proof. Rankin, 133 F.3d at 1435; see also Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (noting that overwhelmingly convincing evidence is not required). Officers are not held to a standard of perfection, but are allowed to make mistakes so long as the mistake is one which a reasonable person would make. See Marx, 905 F.2d at 1507. Officers are not required to adhere to the standard of "legal technicians." See Rankin, 133 F.3d at 1435; see also Marx, 905 F.2d at 1507. To establish probable cause, an arresting officer is required to conduct a reasonable investigation, but is not required to conduct an investigation that would suffice to eliminate the possibility that an innocent person would be arrested. See Rankin, 133 F.3d at 1435-36. The law is clear that law enforcement is entitled to rely "to a meaningful degree" on a victim's statements in determining the existence of probable cause. Id. at 1440.

Neither federal nor Florida law requires that a police officer have a subjective belief in the guilt of the person arrested. Id. at 1433. Once an officer has established probable cause, the officer does not need to investigate independently every claim of innocence. Id. at 1436. The officer's investigation should ensure that an arrest is supported by probable cause, but the officer is not required to conduct a trial. See Williams v. City of Homestead, 206 Fed. Appx. 886, 889 (11th Cir. 2006). The fact that the charges are ultimately dropped is not relevant to determine whether an officer had probable cause to

make an arrest.  Marx, 905 F.2d at 1507.

## III.   ANALYSIS

A finding of probable cause ends the inquiry regarding all of Plaintiff's claims.  Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there was probable cause to arrest Plaintiff and therefore Defendants' are entitled to judgment as a matter of law.  Officers came upon a murder scene at which point the victim's wife accused the Plaintiff of committing the crime and provided a description of the assailant that matched that of the Plaintiff.  Mrs. Arrington informed the officers that the brothers had a history of arguing and that she believed Plaintiff was mentally unstable.  There was a previous incident during which Mrs. Arrington called the police fearing that Plaintiff was going to beat up Mr. Arrington.

Additionally, Plaintiff told the officers, "I don't want to go to prison or jail for this."  One of the deputies observed a red splash on Plaintiff's shoe that appeared to be blood.  Plaintiff had abrasions on his hands that were possibly consistent with prying open the door to fire shots at Mrs. Arrington.  The officers searched the Plaintiff's home and found marijuana, several firearms, and ammunition.  Because Plaintiff informed the deputies at the scene that Plaintiff stood at the doorway of his trailer and observed the shooter fleeing his brother's trailer, Detective Kelly stood at the same location and concluded that it was not possible for Plaintiff to have made that observation because of obstructions in

the line of sight.  The investigation was reasonable and the evidence before the officers warranted the belief by a reasonably prudent person that Plaintiff shot and killed Mr. Arrington and attempted to shoot Mrs. Arrington.  Plaintiff argues that there is a dispute about whether he could actually see the suspect from his trailer, but even without this information, there was still probable cause to arrest Plaintiff.

Rankin precludes the success of Plaintiff's assertion that there was no probable cause because Kinsey did not actually believe there was probable cause.  A subjective belief of the officer is not relevant to the probable cause analysis.  Plaintiff also contends that there was not adequate collective information to establish probable cause.  Plaintiff seems to assert that each piece of evidence making up the collective information bundle must establish probable cause on its own.  This assertion is contrary to the probable cause test which Rankin describes as objectively reasonable under the totality of the circumstances.  Moreover, the fact that the charges were ultimately dropped is of no consequence to the analysis.  Officers are not expected to be legal technicians.  All that is required is a reasonable investigation and based on the totality of the circumstances a reasonably prudent person would have believed that Plaintiff committed an offense.  Based on the foregoing, it is

**ORDERED AND ADJUDGED**:

1.  Defendant Thomas Kinsey's Motion for Summary Judgment With

        Supporting Memorandum of Law (doc. 38) is **granted**.

2.     Defendant, Sheriff Sadie Darnell's, Motion for Summary Judgment With Supporting Memorandum of Law (doc. 39) is **granted**.

3.     The clerk shall enter judgment accordingly.

DONE AND ORDERED this 19th day of July, 2012.

                          *S/ Stephan P. Mickle*
                          Stephan P. Mickle
                          Senior United States District Judge